```
                        UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS
     _____
                                   )
     CHANMONY HUOT, VLADIMIR SALDANA,)
     CHAMPA PANG, THOEUN KONG,      )
     LIANNA KUSHI, DENISSE COLLAZO, )
     SUE J. KIM, SOADY OUCH,        )
     TOOCH VAN, CARMEN BERMUDEZ, KEI)
     KAWASHIMA-GINSBERG, DANIEL K. UK,)
     AND FAHMINA ZAMAN,             )
                                    )
                      Plaintiffs,   )
                                    )         CIVIL ACTION
                 v.                 )         NO. 17-10895-WGY
                                    )
     CITY OF LOWELL, MASSACHUSETTS; )
     KEVIN J. MURPHY, IN HIS        )
     OFFICIAL CAPACITY AS LOWELL    )
     CITY MANAGER; LOWELL CITY      )
     COUNCIL; RITA MERCIER, RODNEY  )
     M. ELLIOTT, EDWARD J. KENNEDY, JR.,)
     JOHN J. LEAHY, WILLIAM         )
     SAMARAS, JAMES L. MILINAZZO,   )
     DANIEL P. ROURKE, COREY A.     )
     BELANGER, JAMES D. LEARY, IN   )
     THEIR OFFICIAL CAPACITIES AS   )
     MEMBERS OF THE LOWELL CITY     )
     COUNCIL; LOWELL SCHOOL         )
     COMMITTEE; STEPHEN J. GENDRON, )
     JACQUELINE DOHERTY, CONNIE A.  )
     MARTIN, ROBERT J. HOEY, JR.,   )
     ROBERT JAMES GIGNAC, ANDRE     )
     DESCOTEAUX, IN THEIR OFFICIAL  )
     CAPACITIES AS MEMBERS OF THE   )
     LOWELL SCHOOL COMMITTEE; LOWELL)
     ELECTION AND CENSUS COMMISSION;)
     AND BEVERLY ANTHES, JOSEPH MULLEN,)
     THEL SAR, THOMAS FR. O'BRIEN,  )
     IN THEIR OFFICIAL CAPACITIES   )
     AS MEMBERS OF THE LOWELL       )
     ELECTION AND CENSUS COMMISSION,)
                                    )
                      Defendants.   )
     _____)
```

YOUNG, D.J.                                           November 21, 2017

**MEMORANDUM OF DECISION**

I.   **INTRODUCTION**

Chanmony Huot, Vladimir Saldaña, Champa Pang, Thoeun Kong, Lianna Kushi, Denisse Collazo, Sue J. Kim, Soady Ouch, Tooch Van, Carmen Bermudez, Kei Kawashima-Ginsberg, Daniel K. Uk, and Fahmina Zaman ("Plaintiffs"), have brought this action against the City Of Lowell, Massachusetts; Kevin J. Murphy, in his official capacity as Lowell City Manager; Lowell City Council; Rita Mercier, Rodney M. Elliott, Edward J. Kennedy, Jr., John J. Leahy, William Samaras, James L. Milinazzo, Daniel P. Rourke, Corey A. Belanger, James D. Leary, in their official capacities as Members of the Lowell City Council; Lowell School Committee; Stephen J. Gendron, Jacqueline Doherty, Connie A. Martin, Robert J. Hoey, Jr., Robert James Gignac, Andre Descoteaux, in their official capacities as Members of the Lowell School Committee; Lowell Election and Census Commission; and Beverly Anthes, Joseph Mullen, Thel Sar, and Thomas FR. O'Brien, in their official capacities as Members of the Lowell Election and Census Commission ("Defendants"), alleging that the Defendants' at-large election system violated the Plaintiffs' rights under (1) Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("Section 2"), (2) the Equal Protection Clause of the Fourteenth

Amendment, and (3) the Fifteenth Amendment.  The Defendants moved to dismiss the complaint, arguing that it does not state a claim upon which relief may be granted because (1) the Plaintiffs do not plead sufficient facts to allege the existence of a large and geographically compact district that would create a majority-minority district, and (2) minority groups may not aggregate their claims and form a minority coalition in order to sustain a claim under Section 2.  The Plaintiffs opposed the motion, arguing that they pled sufficient facts to show a majority-minority district can exist and that minority coalition claims are in fact cognizable under Section 2.  After a hearing on October 17, 2017, this Court DENIED the Defendants' motion to dismiss because (1) the Plaintiffs demonstrated in their complaint that a majority-minority district could exist if certain neighborhoods were combined, and (2) the majority of circuits and district courts that address the issue have persuasively concluded that minority coalitions may maintain claims under Section 2.  This memorandum explains the Court's reasoning.

**A.   Procedural History**

The Plaintiffs filed a complaint seeking injunctive and declaratory relief against the Defendants on May 18, 2017.  Compl. 1, ECF No. 1.  The Defendants moved to dismiss for failure to state a claim upon which relief can be granted.

Defs.' Mot. Dismiss Failure State Claim ("Defs.' Mot."), ECF No. 17. The parties fully briefed the issues. See Defs.' Mem. Law Supp. Mot. Dismiss ("Defs.' Mem."), ECF No. 18; Pls.' Opp'n Defs.' Mot. Dismiss ("Pls.' Opp'n"), ECF No. 21.

**B. Facts Alleged**

The Plaintiffs are members of the City of Lowell's minority community and are also registered voters. Compl. ¶¶ 15-27. The Defendants are the City of Lowell, its City Manager, its City Council, members of the City Council, its School Committee, members of the School Committee, the Lowell Election and Census Commission, and members of the Election and Census Commission. Id. ¶¶ 28-35.

There are nine members in the Lowell City Council and six members in the Lowell School Committee. Id. ¶ 37. Members of the City Council and School Committee are elected in biennial elections, held in odd-numbered years, and each candidate is elected at-large, city-wide, in a plurality voting system. Id. ¶¶ 38-39. The City of Lowell ("City") is divided into eleven separate wards, with each ward encompassing three precincts. Id. ¶ 40. The City votes as a single entity in an at-large, plurality winner-take-all election system, a majority bloc of voters can elect all of their preferred candidates to the Lowell City Council and Lowell School Committee. Id. This election

[4]

system allegedly dilutes the voting power of the City's Hispanic/Latino and Asian-American communities. Id.

Minorities constitute over 49% of the City's total population, and Hispanics/Latinos and Asian-Americans combined comprise approximately 40% of the total population. Id. ¶ 45. According to the U.S. Census Bureau's 2011-2015 American Community Survey, non-Latino whites constitute approximately 50.7% of the City's total population, 55.7% of its voting age population, and 61% of its citizen voting age population. Id. ¶ 46. Asian-Americans constitute approximately 21.8% of the City's total population, 21% of its voting age population, and 17% of its citizens voting age population. Id. Hispanics/Latinos constitute approximately 18.1% of the City's total population, 15.4% of its voting age population, and 15.5% of its citizen voting age population. Id. Blacks/African Americans constitute approximately 7.1% of the City's total population, 6.7% of its voting age population, and 5.3% of its citizen voting age population. Id. According to the 2010 U.S. Census, non-Latino whites constitute 52.8% of the total population and 58.1% of the voting age population, Asian-Americans constitute 20.0% of the total population and 18.8% of the voting age population, Hispanics/Latinos constitute 17.3% of the total population and 14.3% of the voting age population, and Blacks/African Americans constitute 6% of the total population

and 5.6% of the voting age population.  Id.  The growth in the City's minority populations has been steady and significant over the last three decades.  Id. ¶ 47.  Such diversity is not reflected on the Lowell City Council or the Lowell School Committee.  Id. ¶ 48.

There is allegedly a history of voting discrimination in the City.  Id. ¶ 90.  Despite the size of each population, there is not a single Asian-American or Hispanic/Latino sitting on the Lowell City Council or Lowell School Committee.  Id. ¶ 50.  Asian-American and Hispanic/Latino candidates won only two seats in the last five Lowell City Council elections.  Id.  No Asian-American or Hispanic/Latino candidates won a seat on the Lowell School Committee in the last five elections.  Id.

In the City, the preconditions in Thornburg v. Gingles, 478 U.S. 30 (1986)[1] are allegedly met, and the totality of the circumstances allegedly demonstrate that Asian-American and Hispanic/Latino voters together have less opportunity than other members of the electorate to participate in the political process and to elect candidates of their choice to the Lowell City Council and Lowell School Committee.  Id. ¶ 59.  The City's

---

[1] Gingles sets forth three preconditions for a cognizable claim under Section 2: (a) the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district; (b) the minority group is politically cohesive; and (c) the white majority votes as a bloc to defeat the minority's preferred candidate.  478 U.S. at 50-51.

Hispanic/Latino and Asian-American residents together are allegedly sufficiently numerous and geographically compact to form a majority of the total population, voting age population, and citizen voting age population in at least one district of a reasonable and properly apportioned district-based election system. Id. ¶ 60. A district comprising portions of the Acre, Lower Highlands, and Highlands neighborhoods of the City allegedly can be drawn. This district would allegedly satisfy the Gingles precondition that Asian-Americans and Hispanics/Latinos form a majority in a single member district. Id. ¶ 61. The City's Hispanic/Latino and Asian-American voters are allegedly politically cohesive as a coalition minority group and they tend to vote together in support of minority candidates of their choice, particularly Asian-American and Hispanic/Latino candidates. Id. ¶ 62. The City's predominantly white majority electorate allegedly votes as a bloc in support of different candidates from those supported by Asian-Americans and Hispanics/Latinos, and bloc voting by the predominately white majority consistently defeats the candidates preferred by Asian-American and Hispanic/Latino voters. Id. ¶ 63. In 2013, two Cambodian-American candidates lost their elections for City Council despite heavy support from Asian-American and Hispanic/Latino voters. Id. ¶ 65. In 2015, four Cambodian-American candidates ran for City Council and two ran for the

School Committee.  Id.  ¶ 66-67.  Both groups lost despite heavy support from Asian-American and Hispanic/Latino voters.  Id.  In all elections, the white majority voting bloc allegedly overwhelmingly favored other candidates and elected its top choice candidates.  Id. ¶¶ 65-67.

Only four Asian-American or Hispanic/Latino candidates have ever been elected to the Lowell City Council, and none has ever been elected to the Lowell School Committee.  Id. ¶¶ 64-68.  No Asian-American or Hispanic/Latino candidate has been elected to either body since the 2011 election, despite the fact that these groups together comprise approximately 40% of the City's population.  Id.  Candidates elected by the predominantly white majority bloc are allegedly less responsive to the needs and concerns of minority communities in the City.  Id. ¶ 72.

## II. ANALYSIS

The Defendants moved to dismiss on two grounds.  First, the Defendants argued that the Plaintiffs did not plead a sufficiently large and geographically compact district in which they would constitute the voting majority, in accordance with the first factor under Gingles.  See 478 U.S. at 50; see also Defs.' Mem. 6-9.  Second, they argued that the Plaintiffs should not be allowed to proceed with their claims because Section 2 does not allow for different minority groups to aggregate their claims as a minority coalition.  Defs.' Mem. 9-13.  The Court

concluded that the Defendants' arguments were meritless. The Court will address the Defendants' coalition claim first, given that a ruling in their favor under this claim would render the rest of the Plaintiffs' claims essentially moot. See generally Growe v. Emison, 507 U.S. 25, 41 (1993); Nixon v. Kent County, 76 F.3d 1381, 1385-86 (6th Cir. 1996).

**A.  Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, the Plaintiffs must include "enough facts [in their complaint] to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011); see also Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009). The Court "need not accept 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.'" Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

A claim under Section 2 fails unless the three-part test articulated in Gingles is satisfied. See 478 U.S. at 50-51; see also Metts v. Murphy, 363 F.3d 8, 10 (1st Cir. 2004). "First, the minority group must be able to demonstrate that it is

[9]

sufficiently large and geographically compact to constitute a majority in a single-member district." Gingles, 478 U.S. at 50. "Second, the minority group must be able to show that it is politically cohesive." Id. at 51. "Third, the minority must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it -- in the absence of special circumstances, such as the minority candidate running unopposed -- usually to defeat the minority's preferred candidate." Id. (internal citation omitted).

    **B.   Minority Coalition Under Section 2**

The Defendants first argued that the plain language of Section 2 does not allow the Plaintiffs to aggregate their claims. Defs.' Mem. 9-11. In response, the Plaintiffs maintained that the plain language of Section 2 does permit minority coalition claims. Pls.' Opp'n 13-15. Next, the Defendants argued that the Court would contravene the legislative intent of Section 2 by allowing these claims to proceed. Defs.' Mem. 11-13. The Plaintiffs, in turn, argued that a majority of the courts which have addressed this issue agree that minority coalition claims are cognizable under Section 2. Pls.' Opp'n 16-20. For the reasons that follow, the Court agrees that minority coalition claims are cognizable under Section 2.

### 1. Minority View: Nixon v. Kent County.

In Nixon, three African-Americans and three persons of Hispanic origin filed a class action lawsuit against Kent County, claiming that the proposed redistricting plan violated Section 2. 76 F.3d at 1383. The Sixth Circuit held that coalition claims were not cognizable under Section 2. Id. at 1393. The Sixth Circuit explained that the plain language of the statute "does not mention minority coalitions, either expressly or conceptually," that Section 2 "consistently speaks of a 'class' in the singular," and that if Congress "had intended to sanction coalition suits," the statute would have read "participation by members of the classes of citizens protected by subsection (a)." Id. at 1386.

The Sixth Circuit further outlined four policy considerations to support the conclusion that minority coalitions were not cognizable under Section 2. Id. at 1390-93. First, Congress did not find that minority groups form a distinct "protected minority" when they are aggregated. Id. at 1390-91. Second, the authorization of minority coalitions would allow legislators to "pack" districts with minorities and "frustrate those who, in good faith, seek to draw district lines according to the Voting Rights Act's nebulous requirements." Id. at 1391. Third, "[p]ermitting coalition suits effectively eliminates [the first Gingles threshold question], or, at the

[11]

very least, limits it to cases in which the total of all the protected minorities is less than a majority in any one district." Id. Fourth, "allowing coalition suits could change the Act's purpose from preventing discrimination to advancing political interest groups and undermining the very meaning and purpose of democratic government." Sara Michaloski, A Tale Of Two Minority Groups: Can Two Different Minority Groups Bring A Coalition Suit Under Section 2 Of The Voting Rights Act Of 1965, 63 Cath. U.L. Rev. 271, 288-89 (2013); see Nixon, 76 F.3d at 1391-93.

### 2. Majority View: Fifth and Eleventh Circuits

Both the Fifth and Eleventh Circuits recognize minority coalition claims under Section 2. In League of United Latin American Citizens, Council No. 4386 v. Midland Independent School District, 812 F.2d 1494, 1496 (5th Cir. 1987), vacated on state law grounds, 829 F.2d 546 (5th Cir. 1987), Hispanic and Black voters filed a class action lawsuit against the school district, claiming that the at-large system of voting in the election of trustees for the school district diluted their votes. The Fifth Circuit held that there was no error in the district court's finding that Hispanic and Black voters could aggregate their claims. Id. at 1500. The Fifth Circuit explained that both groups "share[d] common experiences in past discriminatory practices" and that "the two groups have

[12]

political goals that are inseparable." Id. The Fifth Circuit also noted that "coalition formation will often prove to be mutually beneficial to the two groups" and that "[t]estimony presented showed that Blacks and Hispanics worked together and formed coalitions when their goals were compatible." Id. at 1500-01.

One year later, in Campos v. City of Baytown, 840 F.2d 1240 (5th Cir. 1988), the Fifth Circuit again endorsed minority coalition claims by holding that "[t]here is nothing in the law that prevents the plaintiffs from identifying the protected aggrieved minority to include both Blacks and Hispanics." Id. at 1244. The Fifth Circuit reasoned that Section 2 protected the right to vote for both racial and language minorities. Id. So long as both groups met the Gingles requirements, they could aggregate their claims under Section 2. Id.

In Concerned Citizens of Hardee County v. Hardee County Board Of Commissioners, 906 F.2d 524 (11th Cir. 1990), Black and Hispanic voters filed separate suits against the county commissioners and school board, alleging that the at-large voting system used in their elections diluted their combined votes in violation of Section 2. Id. at 525-26. The suits were later consolidated. Id. The Eleventh Circuit held that "[t]wo minority groups (in this case blacks and hispanics) may be a single section 2 minority if they can establish that they behave

[13]

in a politically cohesive manner," thus satisfying the second Gingles factor. Id. at 526. Because the plaintiffs in Concerned Citizens of Hardee County could not present evidence of political cohesiveness, their Section 2 claim failed. Id. at 527.

### 3. Other Support for Minority Coalitions

Judge Keith dissented in Nixon, explaining that minority coalition claims are cognizable under Section 2. Nixon, 76 F.3d at 1396 (Keith, J., dissenting). He reasoned that the term "class of citizens" is ambiguous and requires an examination of the legislative history of the statute for clarification. Id. at 1394. He pointed out that the 1975 amendment to the statute, which broadened Section 2 to protect language minorities, suggests that Congress was aware of the need for protected groups to aggregate their claims. Id. Moreover, before the amendment was passed the Supreme Court decided Wright v. Rockefeller, 376 U.S. 52 (1964), a case in which Black and Puerto Rican voters aggregated their claims under Section 2. Judge Keith explained that "[i]f Congress was thus aware that more than one minority group could be considered to constitute one plaintiff class in determining the availability of Voting Rights Act protection, certainly the absence of an explicit prohibition of minority coalition claims compels a construction of Section 2 which allows them." Nixon, 76 F.3d at 1395.

Other circuits have assumed, arguendo, that minority coalitions are allowed under Section 2. In <u>Badillo</u> v. City of <u>Stockton</u>, 956 F.2d 884 (9th Cir. 1992), Hispanic and Black voters filed suit against the city, claiming that its new at-large voting system for the general election violated Section 2. <u>Id.</u> at 885-86. The Ninth Circuit held that the district court did not err in finding that "hispanics and blacks together could form a majority in a single-member district," even though "the evidence failed to establish that such a combined group of blacks and hispanics would vote in a politically cohesive manner that would guarantee election of a minority representative." <u>Id.</u> at 886. Consequently, the plaintiffs in <u>Badillo</u> did not satisfy the second <u>Gingles</u> factor and their claims failed. <u>Id.</u>; <u>see also</u> <u>Growe</u> v. <u>Emison</u>, 507 U.S. 25, 37-42 (1993) (assuming, without deciding, that minority coalition claims are cognizable under Section 2, but holding that the plaintiff failed to establish political cohesion under <u>Gingles</u>).

Similarly, in <u>Bridgeport Coalition for Fair Representation</u> v. <u>City of Bridgeport</u>, 26 F.3d 271 (2d Cir. 1994), <u>vacated and remanded on other grounds</u>, 512 U.S. 1283 (1994), the Second Circuit held that a preliminary injunction was warranted against the city because its reapportionment plan violated Section 2. <u>Id.</u> at 276. The Second Circuit explained that coalition

districts are appropriate under Section 2 so long as the <u>Gingles</u> factors are met. <u>Id.</u>

Section 2's remedial purpose is best served by allowing minority coalition claims: "If two minority groups experience oppression at the hands of the majority, and they are able to establish the same burden of proof as one minority group might, then congressional intent to allow minority groups equal participation in our democratic system of government is best served by allowing them to form a coalition." <u>See</u> Michaloski, 63 Cath. U.L. Rev. at 291. Moreover, "[s]eparating two different minority groups for the purpose of bringing a Section 2 violation further separates, classifies and labels minority groups, thereby further entrenching their minority status rather than promoting the Act's voting equality goal." <u>Id.</u> at 292. In addition, as explained in the cases above, even when suits are brought by a minority coalition, the coalition must still satisfy all three <u>Gingles</u> factors in order to prove a violation of Section 2. <u>See</u> <u>id.</u> at 294.

**4. First Circuit View on Coalition Claims**

The First Circuit has yet to address coalition claims directly, but there is jurisprudence to guide this Court in making its decision to allow coalition claims under Section 2. In <u>Latino Political Action Committee, Inc.</u> v. <u>City of Boston</u>, 784 F.2d 409 (1st Cir. 1986), a pre-<u>Gingles</u> case, a group of

Black, Hispanic, and Asian voters sued the city. Id. at 410. The plaintiffs argued that the city's districting plan for the election of members of the City Council and of the School Committee violated Section 2. Id. The First Circuit held that the claims failed, not because of aggregation of minority groups, but because the plaintiffs did not present any evidence of cohesion among the groups, a factor which later became known as the second factor in Gingles. Id. at 414.

In Black Political Task Force v. Galvin, 300 F. Supp. 2d 291 (D. Mass. 2004) (Selya, J.)[2], "the plaintiffs pursued a theory of aggregation, namely, that African-American and Hispanic voters function in Boston as a combined cross-racial coalition with shared interests." 300 F. Supp. 2d at 294 n.1. "At trial, however, the testimony concentrated on the voting patterns of African-Americans." Id. The District Court, however, did not fully address the aggregated claims, and ruled that "the district lines must be redrawn" because the Redistricting Act discriminated against black voters. Id. The District Court, therefore, did not need to "probe the complex question of whether the plaintiffs' evidence revealed a cohesive coalition among African-American and Hispanic voters." Id.

---

[2] Of the United States Court of Appeals for the First Circuit, sitting by designation.

[17]

Accordingly, in order properly to serve Section 2's legislative intent of curing past discrimination and remain faithful to the reasoning of the majority of the circuit and district courts which have considered the issue, this Court DENIED the City's motion to dismiss because minority coalition claims are cognizable under Section 2.

C. **Majority-Minority District under Gingles[3]**

The Defendants argued that the Plaintiffs did not comply with the first Gingles factor because they did not provide any evidence of a majority-minority district. Defs.' Mem. 6-9. They did not argue that the Plaintiffs are obligated to produce a map of the proposed district, but that the Plaintiffs must identify more than just the portions of neighborhoods which would be part of the majority-minority district. Id. 8 n.4. The Plaintiffs argued that they alleged sufficient facts to show that a majority-minority district could be created. Pls.' Mem. 6-13. This Court DENIED the motion to dismiss because the Plaintiffs adequately pled a majority-minority district in paragraphs 45-46, 61, 106, and 117 of their complaint in accordance with the first factor in Gingles.

---

[3] The Defendants do not argue that the Plaintiffs failed to satisfy the remaining two Gingles factors: political cohesiveness and white majority voting bloc.

[18]

The first Gingles factor requires the minority group "to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district." Gingles, 478 U.S. at 50. "[M]ere recitation of the Gingles precondition" is not enough adequately to plead a Section 2 claim. Luna v. County of Kern, No. 16-cv-00568-DAD-JLT, 2016 WL 4679723, at *4 (E.D. Cal. Sept. 2, 2016). The First Circuit cautions against the dismissal of a Section 2 claim at the pleading stage. See Metts, 363 F.3d at 11 ("It is no accident that most cases under section 2 have been decided on summary judgment or after a verdict, and not on a motion to dismiss.").

Here, the Plaintiffs alleged in their complaint that "minorities constitute over 49% of Lowell's total population, and Hispanics/Latinos and Asian-Americans combined comprise approximately 40% of the total population." Compl. ¶ 45. The Plaintiffs also alleged that "[i]t is possible to draw redistricting maps for the City of Lowell in which Asian-Americans and Hispanics/Latinos would form a majority of the population in at least one reasonable and properly-apportioned single-member district for both the Lowell City Council and the Lowell School Committee . . . [and] a district comprising portions of the Acre, Lower Highlands, and/or Highlands neighborhoods of Lowell can be drawn that satisfies this precondition." Id. ¶ 61. These allegations satisfy the first

Gingles factor because they do more than just recite the first factor, they actually offer an idea of what the proposed district would look like by describing the possible neighborhoods that could create the district. See Luna, 2016 WL 4679723, at *4.

**III. CONCLUSION**

For the foregoing reasons, this Court on October 17, 2017 DENIED the Defendants' motion to dismiss, ECF No. 17. See ECF No. 22.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE